No. 19-3797

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

QUINTEZ TALLEY

*Appellant,*

v.

MAJOR CLARK; et al.,

*Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Civ. No. 2:19-cv-00253
District Court Judge: The Honorable Timothy Savage

---

## BRIEF BY AMICI CURIAE

---

Zhixin (Julie) Han
University of Pennsylvania Law School
(Admitted Pursuant to L.A.R. 46.3)

Vernon L. Francis, Esq.
Craig J. Castiglia, Esq.
DECHERT LLP
Cira Centre
2929 Arch St.
Philadelphia, PA 19104
Tel: (215) 994 4000
Fax: (215) 994 2222

*Court-appointed Pro Bono Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICI CURIAE.....................................................................1

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUE ....................................................................1

STATEMENT OF THE CASE .......................................................................1

SUMMARY OF THE ARGUMENT................................................................3

ARGUMENT.................................................................................................5

    I.    To Exhaust Administrative Remedies, Pennsylvania Inmates Impeded From Filing Grievances Generally Need To Request Extensions If An Impediment Resolves.......................................5

    II.    To The Extent Threats And Intimidation Impeded Talley From Seeking Relief, They May Qualify As An Impediment That Was Not "Gone."..................................................................8

CONCLUSION ......................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aquilar-Avellaveda v. Terrell*,
478 F.3d 1223 (10th Cir. 2007) ............................................................... 10

*Brown v. Croak*,
312 F.3d 109 (3d Cir. 2002) ............................................................... 5, 10

*Davis v. Does*,
2021 WL 1212533 (M.D. Pa. Mar. 31, 2021), *appeal dismissed*, 2021 WL
8323789 (3d Cir. Dec. 2, 2021) ............................................................... 7

*DuBoise v. Woods*,
2020 WL 437706 (W.D. Pa. Jan. 9, 2020), *report and recommendation
adopted*, 2020 WL 435918 (W.D. Pa. Jan. 28, 2020) .................................... 8

*Estelle v. Gamble*,
429 U.S. 97 (1976) ............................................................... 10

*Harper v. Jenkin*,
179 F.3d 1311 (11th Cir. 1999) ............................................................... 5

*Harris v. Wingard*,
2017 WL 2828594 (W.D. Pa. June 29, 2017),
*aff'd sub nom. Harris v. Poska*, 728 F. App'x 149 (3d Cir. 2018) .................. 6

*Jordan v. Bertolini*,
2018 WL 3737917 (W.D. Pa. Aug. 7, 2018) ............................................... 7

*McGoldrick v. Beard*,
2009 WL 1956243 (W.D. Pa. July 6, 2009) ............................................... 7

*Milhouse v. Davis*,
2011 WL 3803451 (E.D. Pa. Aug. 25, 2011) ............................................... 6

*Paladino v. Newsome*,
885 F.3d 203 (3d Cir. 2018) ............................................................... 11

*Ray v. Kertes*,
285 F.3d 287 (3d Cir. 2002) ............................................................... 9

*Rinaldi v. United States*,
    904 F.3d 257 (3d Cir. 2018)....................................................... 4, 9

*Ross v. Blake*,
    578 U.S. 632 (2016) ............................................................ 4, 5, 8

*Schultz v. Pugh*,
    728 F.3d 619 (7th Cir. 2013)......................................................9

*Scullen v. Mahally*,
    2018 WL 1335195 (M.D. Pa. Mar. 15, 2018)..............................7

*Stephens v. Howerton*,
    2007 WL 1810242 (S.D. Ga. June 21, 2007), *aff'd*, 270 F. App'x 750 (11th Cir. 2008)........................................................................6

*Thomas v. Brinich*,
    579 F. App'x 60 (3d Cir. 2014)................................................ 10

*Timmons v. Bohinski*,
    2023 WL 7285478 (M.D. Pa. Nov. 3, 2023)............................. 11

*West v. Emig*,
    787 F. App'x 812 (3d Cir. 2019) ...............................................6

*Woodford v. Ngo*,
    548 U.S. 81 (2006)...................................................................4

*Woods v. Harry*,
    2022 WL 493871 (M.D. Pa. Feb. 17, 2022) ..............................9

**STATUTES**

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

42 U.S.C. § 1997e.................................................................... 3, 5

## INTEREST OF AMICI CURIAE

Dechert LLP attorneys Vernon Francis and Craig Castiglia were appointed by Third Circuit Order as *amici curiae* to address an issue specified in the Order. *Amici* has no interest in the outcome of this case. *Amici* and third-year University of Pennsylvania Law School student Zhixin (Julie) Han authored this brief in whole. No party, party's counsel, or any person aside from *amici* contributed money intended to fund the brief's preparation or submission.

## STATEMENT OF JURISDICTION

The federal courts have jurisdiction over this case pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

For purposes of administrative exhaustion, must a prisoner in the Pennsylvania state prison system who has been impeded from filing a grievance seek an extension of time to file such a grievance once the impediment is gone?

## STATEMENT OF THE CASE[1]

Quintez Talley brought federal and state claims *pro se* against numerous defendants affiliated with the Pennsylvania prison system. Talley's claims arise from events that allegedly occurred at SCI Graterford[2] in January 2018.

---

[1] All "SAA" citations refer to the concurrently filed supplemental appendix.
[2] Talley was an inmate at SCI Fayette when he filed his complaint in 2019. (SAA003, ¶ 1.)

According to Talley, corrections officers subjected him to a "campaign" of harassment around that time. (SAA004, ¶¶ 2-4.) As a result of the distress he sustained, Talley was treated and housed "[o]n several occasions" at the facility's Psychiatric Observation Cell ("POC"). (SAA004, ¶ 4.) During one such occasion, on January 4, 2018, Talley told two of the defendants about the harassment and reported he had suicidal thoughts. (SAA006, ¶ 16.) He was returned to the Restricted Housing Unit ("RHU") that day. (SAA006, ¶ 17.)

Upon his return, officers allegedly "initiated [a] plan" to place Talley near another inmate, Patrick Harrison, so that Harrison could "more easily get to [Talley] on a daily basis." (SAA007-008, ¶¶ 23-25.) These officers told Harrison that they did not care what Harrison "did or said to [Talley]" because Talley, by filing lawsuits, "had 'riffled the features' of some people very high in the DOC chain." (SAA008, ¶ 24.) Thereafter, Harrison "was given free rein to do and say anything to [Talley]," including threatening to rape him. (SAA008, ¶ 25; SAA010 ¶ 36.)

In response, Talley attempted to commit suicide on January 6, 2018, by setting fires in his cell. (SAA010-013, ¶¶ 37-44, 46-47, 52-56.) The first fire burned for hours but officers "made [no] attempt" to evacuate him. (SAA011, ¶¶ 42.) Talley claims another officer instructed colleagues to "leave [him] to die." (*Id.*) Eventually, Talley lost consciousness. (SAA011-012, ¶ 46.) When Talley

awakened, his jumpsuit was "drenched" (from water thrown under his cell door) and his belongings were "in a burnt heap." (SAA011-012, ¶ 47.)

Soon thereafter, Talley started another fire by "light[ing] paper and slid[ing] it out the side of his door" to alert others of his suicidal thoughts. (SAA013, ¶¶ 53.) While the fire burned, officers and other inmates screamed and cursed at Talley, including threats of physical harm. (SAA013, ¶¶ 52-55.) This second fire was extinguished, and Talley was treated, committed to the POC, and placed on suicide watch from January 6 to February 9, 2018. (SAA013-014, ¶¶ 56-58, 61.)

On January 9, 2019, Talley filed his complaint in federal court. (SAA001.) Talley alleged the prison's grievance procedure was "unavailable" because he lacked access to writing materials while on suicide watch, rendering him unable to file a timely grievance within 15 working days under Pennsylvania Department of Corrections Administrative Regulation 804 ("DC-ADM 804"). (SAA014, ¶ 61.) The district court found that the grievance was available after the suicide watch ended because DC-ADM 804 allows extensions in certain circumstances. (SAA027-029.) Therefore, it dismissed Talley's claims for failure to exhaust administrative remedies. (*Id.*)

## SUMMARY OF THE ARGUMENT

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing in federal court. 42 U.S.C. § 1997e(a). However, the PLRA requires only "proper exhaustion," meaning

exhaustion of "available" administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). As this Court's question recognizes, an inmate's administrative remedies may be rendered unavailable by an impediment.

When an impediment to exhaustion is removed and the prison system offers extensions of time to file grievances, courts generally require inmates to seek an extension for purposes of exhaustion. *See infra* Section I (collecting cases). That is because courts must "apply [the exhaustion standard] to the real-world workings of prison grievance systems" to determine whether an administrative remedy is capable of use. *Ross v. Blake*, 578 U.S. 632, 643 (2016). In this case, the relevant prison-grievance system—Pennsylvania's—specifically provides that "[a] time extension for filing a grievance will be considered on a case-by-case basis." (Doc. 72 at 11.)

Here, when assessing whether the process was available to Talley under DC-ADM 804, the district court focused on a temporary impediment to Talley's administrative relief: access to writing materials. But Talley's complaint includes serious allegations of, among other things, retaliatory physical threats. Indeed, Talley alleges that a "campaign of harassment" stemmed from his filing of lawsuits that "'riffled the feathers' of some people very high in the DOC chain." (SAA006, ¶ 16; SAA008, ¶ 24.) This Court has held that "serious threats of substantial retaliation can trigger … unavailability." *Rinaldi v. United States*, 904 F.3d 257, 267-69 (3d Cir. 2018).

Thus, *amici* respectfully recommend remanding Talley's case to the district court for further factfinding to determine whether retaliatory threats deterred Talley from seeking administrative relief and, if so, their status when Talley filed his complaint. *See Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (remanding where administrative-exhaustion question could not be resolved without discovery on a disputed fact question).

## ARGUMENT

I.    **To Exhaust Administrative Remedies, Pennsylvania Inmates Impeded From Filing Grievances Generally Need To Request Extensions If An Impediment Resolves.**

Under the PLRA, an inmate is required to exhaust all available administrative remedies before filing a claim in federal court. 42 U.S.C. § 1997e(a). As the Supreme Court has stated, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 578 U.S. at 639. That qualifier, as explained above, is informed by the "real-world workings" of the relevant prison-grievance system. *Ross*, 578 U.S. at 643.

When an extension is available in a prison-grievance system, courts have held that inmates must seek it for exhaustion purposes. For example, in *Harper v. Jenkin*—relied on by the district court—the Eleventh Circuit noted that the relevant state's prison-grievance procedure "allow[ed] the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown." 179 F.3d 1311, 1312 (11th Cir. 1999). Because the appellant "ha[d] not sought leave to file an out-

of-time grievance," the court concluded that he had not exhausted his administrative remedies. *Id.*; *see also Stephens v. Howerton*, 2007 WL 1810242, at *13 (S.D. Ga. June 21, 2007) (stating that "[o]nce administrative remedies became available, Plaintiff was obliged to exhaust them" and finding failure to exhaust "because Plaintiff did not seek to file an out-of-time grievance"), *aff'd*, 270 F. App'x 750 (11th Cir. 2008).

Courts within this circuit have also found that inmates should seek available extensions to exhaust administrative remedies. In *Harris v. Wingard*, for example, the court concluded that plaintiff "did not exhaust his administrative remedies," noting that plaintiff "could have requested an extension of time and failed to do so." 2017 WL 2828594, at *3 (W.D. Pa. June 29, 2017), *aff'd sub nom. Harris v. Poska*, 728 F. App'x 149 (3d Cir. 2018). Similarly, in *Milhouse v. Davis*, the court concluded that plaintiff "failed to demonstrate proper exhaustion" and rejected his timeliness argument because "the regulations clearly provide[d] a method for requesting extensions for filing appeals." 2011 WL 3803451, at *3 (E.D. Pa. Aug. 25, 2011).

Here, the inmate-grievance system is governed by DC-ADM 804,[3] which provides that "[a] time extension for filing a grievance will be considered on a

---

[3] The parties' appellate briefs cited *West v. Emig*, 787 F. App'x 812 (3d Cir. 2019). Although *West* examined the availability of relief for an inmate similarly situated to Talley, it involved Delaware state-prison policies, as opposed to DC-ADM 804. Upon reviewing the record in *West*, *amici* have not identified any provision

case-by-case basis." (Doc. 72 at 11.) When interpreting DC-ADM 804, courts have likewise required that inmates impeded from filing a grievance seek an extension once the impediment is gone. For instance, in *Jordan v. Bertolini*, the court found that "in failing to request an extension, Plaintiff has failed to exhaust his administrative remedies" because "[a] plain reading of the DC-ADM 804 policy suggests that Plaintiff could have requested an extension after he regained access to his paperwork." 2018 WL 3737917, at *5 (W.D. Pa. Aug. 7, 2018); *see also McGoldrick v. Beard*, 2009 WL 1956243, at *2 (W.D. Pa. July 6, 2009) (finding that even if plaintiff's alleged inability to file a grievance within the deadline were true, it did "not explain his failure to ask for an extension of time to file a grievance") (citing DC-ADM 804); *Davis v. Does*, 2021 WL 1212533, at *5 (M.D. Pa. Mar. 31, 2021) (holding that "[b]ecause Plaintiff could have requested a time extension [under DC-ADM 804] in which to file his grievance, the grievance procedure was 'available' to him"), *appeal dismissed*, 2021 WL 8323789 (3d Cir. Dec. 2, 2021); *cf. Scullen v. Mahally*, 2018 WL 1335195, at *3 (M.D. Pa. Mar. 15, 2018) ("[A]n inmate cannot cite to alleged staff impediments to grieving a matter … if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.") (citing *Oliver v. Moore*, 145 Fed. App'x 731 (3d Cir. 2005)).

---

regarding extensions in Delaware's inmate grievance policy, in contrast to DC-ADM 804.

**II.    To The Extent Threats And Intimidation Impeded Talley From Seeking Relief, They May Qualify As An Impediment That Was Not "Gone."**

Talley's failure to file a grievance or seek an extension should not necessarily extinguish his claims. That is because the "availability" inquiry depends on the specific impediment and whether it is capable of being characterized as "gone." Although the focus in this case was on Talley's access to writing materials, other impediments can render the grievance process unavailable as well. For example, "when prison administrators thwart inmates from taking advantage of the grievance process," including through intimidation, the process is rendered unavailable. *Ross*, 578 U.S. at 645.

*DuBoise v. Woods*, 2020 WL 437706 (W.D. Pa. Jan. 9, 2020), *report and recommendation adopted*, 2020 WL 435918 (W.D. Pa. Jan. 28, 2020), is instructive. There, despite finding that plaintiffs failed to seek an extension and exhaust their claims, the court noted that "the record … include[d] evidence that prison personnel intimidated the Plaintiffs not to file a grievance." *Id.* at *4. The court also noted physical threats and reasoned that—even though plaintiffs were not deterred from filing their present lawsuit—"the fact that … Plaintiffs did not file a grievance about this incident … could support a finding that they were in fact deterred from making such filings." *Id.* Thus, the court "recommended that an evidentiary hearing be held to resolve the disputed issue of whether the grievance process was unavailable." *Id.*

8

To establish unavailability based on threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Rinaldi*, 904 F.3d at 269. Here, as described above, Talley's complaint included allegations of physical threats of a retaliatory nature. (SAA008, ¶ 24) (describing the motivation as stemming from his filing of a lawsuit that "'riffled the feathers' of some" corrections officers). If established and with further factfinding, these threats could meet *Rinaldi*'s objective prong. *See Rinaldi*, 904 F.3d at 269 (involving retaliatory cell assignment with threatening inmate). With respect to the subjective prong, Talley's prior trauma and mental-health diagnoses, (SAA004, ¶¶ 4-5; SAA010, ¶ 37), may bear on whether he was vulnerable to the alleged harassment. *Cf. Schultz v. Pugh*, 728 F.3d 619, 621 (7th Cir. 2013) (considering possibility of "'eggshell skull' prisoners").

Although Talley did not characterize the alleged threats as a basis for unavailability—instead, alleging unavailability based on his lack of access to writing materials, (SAA014, ¶ 61)—"[a] plaintiff does not have to plead in the complaint that they exhausted their administrative remedies." *Woods v. Harry*, 2022 WL 493871, at *6 (M.D. Pa. Feb. 17, 2022); *see also Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (holding that "failure to exhaust is an affirmative defense"). Moreover, Talley's allegation relating to unavailability must be

9

contextualized by his *pro se* status. "[A] pro se complaint, however inartfully

pleaded, must be held to less stringent standards … and can only be dismissed for

failure to state a claim if it appears beyond doubt that plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*,

429 U.S. 97, 106 (1976) (quotations omitted). Taking Talley's allegations together,

his lack of access to writing materials is not the *only* basis for unavailability on the

face of the complaint. *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014)

(stating that dismissal for failure to state a claim is "appropriate only … where the

complaint reveals the exhaustion defense on its face"); *see also Aquilar-Avellaveda*

*v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (similar).

At bottom, the threats described in Talley's complaint may qualify as an

unresolved impediment that rendered his administrative remedies unavailable.

Several factual questions remain unclear, including whether (1) prison officials

threatened Talley with retaliation if he filed grievances relating to the complaint's

alleged events and (2) Talley was actually deterred from filing a grievance based

on those threats. Equally unclear is the status of any threats at the time that Talley

filed his complaint. Thus, *amici* recommend remanding Talley's case to the district

court to resolve the disputed factual issues relating to whether Talley was

intimidated from seeking an extension as part of the grievance process. *See Brown*,

312 F.3d at 112 (concluding that, "[w]ithout further discovery, … there is

insufficient evidence to find that [plaintiff] failed to exhaust his administrative

remedies"); *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018) (holding "that some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion"); *Timmons v. Bohinski*, 2023 WL 7285478, at *4 (M.D. Pa. Nov. 3, 2023) (denying motion to dismiss based on failure to exhaust where it would "require[] resolution of factual questions" relating to threats).

## CONCLUSION

For the foregoing reasons, *amici* respectfully submit that the Court should remand Talley's case to this district court to resolve the issue of whether the grievance process was unavailable to Talley.

Dated:  December 13, 2023                    Respectfully submitted,

                                             */s/ Vernon L. Francis*

Zhixin (Julie) Han                          Vernon L. Francis, Esq. (Pa. 54001)
University of Pennsylvania                  Craig J. Castiglia, Esq. (Pa. 324320)
Law School                                  DECHERT LLP
(Admitted Pursuant to L.A.R. 46.3)          Cira Centre, 2929 Arch Street
                                            Philadelphia, PA 19104
                                            Tel: (215) 994-4000
                                            Fax: (215) 994-2222

*Court-appointed Pro Bono Amici Curiae*

## **<u>CERTIFICATE OF ADMISSION TO THE BAR</u>**

Pursuant to LA.R. 28.3(d), I hereby certify that Vernon L. Francis and Craig J. Castiglia are members in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated:  December 13, 2023                    <u>/s/ *Craig J. Castiglia*</u>

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH THE TYPE-VOLUME LIMITATION</u>

1.      This brief contains 2,499 words, excluding those portions of the brief exempted by Fed. R. App. 32(f), and therefore complies with the 2,500-word limitation on brief length set forth in the Court's November 3, 2023 order. (Doc. 103.)

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Times New Roman font.


Dated: December 13, 2023                    /s/ *Craig J. Castiglia*

## <u>CERTIFICATE OF COMPLIANCEWITH</u>
## <u>LOCAL RULE OF APPELLATE PROCEDURE 31.1(c)</u>

This brief complies with the electronic filing requirements of L.A.R. 31.1(c) because:

1.      The text of the electronic brief filed with the Court is identical to the text of the paper copies of the brief filed with the Court and served on the parties; and

2.      The PDF file containing this brief electronically filed with the Court via the electronic filing system was scanned for viruses using Microsoft Defender Antivirus (Security intelligence version: 1.403.366.0) and no virus was detected.

Dated: December 13, 2023              /s/ *Craig J. Castiglia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2023, I caused the foregoing Brief by

Amici Curiae to be served upon the following as indicated below:

### Via First Class Mail:

Quintez Talley, *pro se*
Camp Hill SCI
P.O. Box 8837
2500 Lisburn Road
Camp Hill, PA 17001

*Plaintiff-Appellant*

### Via ECF:

Kevin R. Bradford, Esq.
Office of Attorney General of Pennsylvania
21 S 12th Street, 3rd Floor
Philadelphia, PA 19107

Sarina M. Kaplan, Esq.
Office of Attorney General of Pennsylvania
1600 Arch Street, Suite 300
Philadelphia, PA 19103

Claudia M. Tesoro, Esq.
Office of Attorney General of Pennsylvania
1600 Arch Street, Suite 300
Philadelphia, PA 19103

Cassidy L. Neal, Esq.
Baum O'Connor Cullen Chmiel
912 Fort Duquesne Boulevard
Pittsburgh, PA 15222

*Attorneys for Defendants-Appellees*

December 13, 2023                    */s/ Craig J. Castiglia*